ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

AMANI S. FLOYD (CABN 301506)
Assistant United States Attorney

    150 Almaden Boulevard, Suite 900
    San Jose, California 95113
    Telephone: (408) 535-5596
    FAX: (408) 535-5066
    Amani.Floyd@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANSISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR 21-376-VC |
| Plaintiff, | UNITED STATES' SENTENCING MEMORANDUM |
| v. | |
| HECTOR ESTRADA CERVANTES, | |
| Defendant. | |

## I.    INTRODUCTION

    Defendant Hector Estrada Cervantes was one of two defendants originally charged by criminal complaint for his role in trafficking methamphetamine in the San Jose, California area. Dkt. 1. During the course of the government's investigation, Mr. Estrada Cervantes was identified as a drug courier who transported narcotics and brokered deals for various drug trafficking organizations throughout California. During the investigation, Mr. Estrada Cervantes introduced an undercover officer to his co-defendant, Juan Luis Contreras Rodriguez a.k.a. "El Diablo", and assisted in brokering several deals between the undercover officer and Mr. Contreras Rodriguez. Mr. Estrada Cervantes also served as a courier during one controlled buy and helped facilitate a second controlled buy that resulted in the seizure of approximately twenty pounds of methamphetamine.

    On September 23, 2021, the Grand Jury returned an Indictment charging Mr. Estrada Cervantes

1  and Mr. Contreras Rodriguez with Conspiracy to Distribute and Possess with Intent to Distribute 50 Grams
2  and More of a Mixture and Substance Containing Methamphetamine in violation of 21 U.S.C. §§ 846,
3  841(a)(1), and 841(b)(1)(B)(viii) (Count 1); Possession with Intent to Distribute 50 Grams and More of a
4  Mixture and Substance Containing Methamphetamine in violation of 21 U.S.C. § 841(a)(1) and
5  (b)(1)(B)(viii) (Count 2); and Possession with Intent to Distribute 50 Grams and More of a Mixture and
6  Substance Containing Methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(viii)
7  (Count 3). Dkt. 55.

8  On December 12, 2022, Mr. Estrada Cervantes pled guilty to Counts One and Two of the
9  Indictment. As noted in the Presentence Investigation Report ("PSR"), there is no plea agreement in this
10 matter. PSR ¶ 3; *see also* Dkt. 107. Mr. Estrada Cervantes is set for sentencing before the Honorable
11 Vince Chhabria on September 13, 2023.

12 As discussed in more detail below, the government agrees with U.S. Probation's calculation of the
13 applicable Guidelines range of 135 - 168 months' imprisonment.[1] However, while Probation recommends
14 a sentence of 60 months' imprisonment, the government believes that a more serious punishment is
15 warranted in this case considering the serious nature of Mr. Estrada Cervantes' offenses and the need to
16 deter other from engaging in similar crimes. As such, the government recommends a below Guidelines
17 sentence of 115 months' imprisonment, followed by a term of supervised release, for Mr. Estrada
18 Cervantes' unlawful conduct.

19 **II.     BACKGROUND**
20     **A.     Offense Conduct**

21 This prosecution is the result of a federal law enforcement operation that was aimed at identifying
22 suppliers of large quantities of methamphetamine in the Northern District of California. In early
23 January 2020, Mr. Estrada Cervantes put an undercover officer (the "UC") in touch with Mr. Contreras
24 Rodriguez to discuss a potential one-pound methamphetamine deal that was supposed to occur on
25 January 15, 2020. PSR ¶ 10. While that deal did not occur, in February 2020, Mr. Estrada Cervantes told

---

[1] Estrada Cervantes has pled guilty to violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(B)(viii) in Count One and to violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(viii) in Count 2 of the Indictment, both of which carry a five-year mandatory minimum sentence. However, the government believes that Estrada Cervantes is eligible for the Safety Valve provision of the First Step Act.

the UC that he would check with three different sources for additional methamphetamine and later said that he would try to get the methamphetamine from Mr. Contreras Rodriguez. *Id*. at ¶¶ 11-12.

On February 6, 2020, Mr. Estrada Cervantes delivered 887.4 net grams of pure methamphetamine to the UC that was sourced from Contreras Rodriguez.[2] *Id*. at ¶¶ 13-14. The UC paid a total of $3,900 for the methamphetamine, which included a $100 fee for Mr. Estrada Cervantes' delivery. *Id*. at ¶ 14. After the deal, Mr. Estrada Cervantes delivered the money he obtained from the UC to Mr. Contreras Rodriguez in Richmond, California later that evening. *Id*. at ¶15.

In February and March 2020, the UC continued to have conversations with Mr. Contreras Rodriguez about future deals, and the two eventually agreed to conduct a 40-pound methamphetamine deal which was supposed to occur over two separate days in early March 2020. *Id*. at ¶¶ 16-17. Mr. Contreras Rodriguez agreed sell 20 pounds of methamphetamine to the UC on March 4, 2020 and another 20 pounds of methamphetamine to the UC on March 5, 2020. *Id*. at ¶17.

On March 3, 2020, in anticipation of the scheduled 20-pound deal that was supposed to occur the next day, Mr. Estrada Cervantes met with the UC. *Id*. at ¶ 18. During the meeting, the UC showed Mr. Estrada Cervantes what appeared to be $70,000 and Mr. Estrada Cervantes took a photo of the money as proof that the UC could pay for the methamphetamine. *Id*.

On March 4, 2020, the UC was in contact with both Mr. Contreras Rodriguez and Mr. Estrada Cervantes about the upcoming 20-pound methamphetamine deal scheduled for that day. Mr. Estrada Cervantes ultimately met with the UC in a Home Depot parking lot in El Cerrito, California for the deal except that the UC was told that he needed to go to Mr. Contreras Rodriguez's residence in Richmond in order to complete the deal. *Id*. at ¶¶ 19-20. The UC declined unless Mr. Contreras Rodriguez and Mr. Estrada Cervantes could confirm that the methamphetamine was at Mr. Contreras Rodriguez's house in Richmond. *Id*. at ¶ 21. In response, Mr. Estrada Cervantes agreed to go to Mr. Contreras Rodriguez's residence, take a photograph of the methamphetamine, and return to the UC with proof that the methamphetamine was there. *Id*. Mr. Estrada Cervantes did just that. *See id*. He traveled from El Cerrito

---

[2] The PSR includes the *gross* weight of the methamphetamine seized on February 6, 2020 – i.e., approximately 947.2 gram. *See* PSR ¶ 14. The government includes the *net* weight above based on final lab results.

to Richmond, got out of his truck, entered Mr. Contreras Rodriguez's home, came out the back of the residence, and then drove back to the Home Depot parking lot in El Cerrito with a photo of vacuum-sealed bundles of what appeared to be methamphetamine on a red couch in order to confirm that the 20 pounds were indeed at Mr. Contreras Rodriguez's residence in Richmond. *Id*.



Both Mr. Estrada Cervantes and Mr. Contreras Rodriguez were arrested, and Mr. Contreras Rodriguez's residence was searched. *Id*. at ¶¶ 22-23. Officers found the 20 vacuum-sealed and plastic wrapped bundles of methamphetamine which turned out to weigh 8,534 net grams of pure methamphetamine.[3] *Id*. at ¶ 23.

All-in-all, Mr. Estrada Cervantes is responsible for delivering or facilitating the potential sale of 9,421.4 grams, or 9.4214 kilograms, of pure methamphetamine to law enforcement within a 1-month period. *Id*. at ¶ 27. To put that in perspective, the average individual dose of methamphetamine is approximately 0.20 grams of methamphetamine. That means that Mr. Estrada Cervantes knowingly and willfully helped sell or potentially sell over 47,100 average individual doses of methamphetamine to law enforcement – all of which he presumably thought would end up in the bodies of customers. The gravity of Mr. Estrada Cervantes' conduct was significant.

### III. SENTENCING GUIDELINES CALCULATION

The government concurs with Probation's calculation of Mr. Estrada Cervantes' Guidelines calculation—i.e., a Total Offense Level of 33 and Criminal History Category I, yielding an advisory Guidelines range of 135 – 168 months' imprisonment.

---

[3] The PSR includes the *gross* weight of the methamphetamine seized on March 4, 2020 – i.e., approximately 10.43 kilograms. *See* PSR ¶ 23. The government includes the *net* weight above based on final lab results.

## IV. SENTENCING RECOMMENDATION

The Court must impose a sentence sufficient, but not greater than necessary, to reflect the seriousness of the offense, deter others from committing similar crimes, protect the public from the defendant, and rehabilitate the defendant. 18 U.S.C. § 3553(a)(2); *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). Section 3553(a) sets forth several factors that the Court must consider in determining a just sentence: (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the purposes of sentencing; (3) the kinds of sentences available; (4) the Guidelines range for sentences; (5) any pertinent policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a); *Carty*, 520 F.3d at 991.

Importantly, although they are not binding, the Guidelines "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives", *Rita v. United States*, 551 U.S. 338, 350 (2007), and should be the starting point and the initial benchmark for sentencing. *Gall v. United States*, 552 U.S. 38, 49 (2007).

In this case, the government's below Guidelines recommendation of 115 months of imprisonment is primarily driven by the seriousness of Mr. Estrada Cervantes' offense conduct and the need to deter others from committing similar offenses. As the Court is aware, the distribution of illegal narcotics has caused unimaginable harm in our community and throughout the United States; and methamphetamine in particular is a serious problem in California—rather it be the drug being smuggled across California's southern border and distributed throughout the state, increasing methamphetamine poisonings and deaths, or the violence that surrounds this illegal market. Now, that is not to say that Mr. Estrada Cervantes is responsible for all the harm caused by methamphetamine in our community. In a sense, he was "just a courier." However, while it is indeed true that drug couriers like Mr. Estrada Cervantes are often times not the most culpable individuals in drug trafficking conspiracies, their conduct undeniably facilitates drug trafficking and contributes to the devastating effects of drug trafficking in communities, compromising the health and safety of the public. That is why the government submits that a 115-month sentence, which is 20 months below the applicable Guidelines range in acknowledgment of existing mitigating factors, is appropriate in this case.

**V.     CONCLUSION**

In sum, considering the nature and circumstances of Mr. Estrada Cervantes' offenses and the goals of sentencing, the United States respectfully requests that the Court sentence Mr. Estrada Cervantes to 115 months' imprisonment, followed by a term of supervised release.

DATED: September 6, 2023                    Respectfully submitted,

                                            ISMAIL J. RAMSEY
                                            United States Attorney

                                             /s/
                                            AMANI S. FLOYD
                                            Assistant United States Attorney